```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-20203-CIV-LENARD
                              MAGISTRATE JUDGE P.A. WHITE

EDDIE LEE BANKS,                   :

       Plaintiff,                  :

v.                                 :      REPORT OF
                                          MAGISTRATE JUDGE
SFRC MEDICAL DEPT. OFFICIALS,      :
et al.,

       Defendants.                 :
_____
```

## I. Introduction

The plaintiff, Eddie Lee Banks, currently incarcerated at the Everglades Correctional Institution ("ECI"), has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 raising claims arising at ECI and at the South Florida Reception Center ("SFRC"). (DE #1). The plaintiff named as defendants SFRC Nurse Vasseller and ECI Chief Physician Dr. Balmir. (DE# 1).

Banks alleged in the complaint that he arrived at SFRC on November 15, 2007 in great pain, and a nurse told him he had a hernia and gave him pain medication. The next day the plaintiff presented to Nurse Vasseller, and she determined that his problem was not serious enough to be referred to a doctor. On November 17, 2007, the plaintiff declared a medical emergency and was given pain medication. On November 19, 2007 the plaintiff went to sick call seeking treatment for pain, but Nurse Vasseller refused to see him. Officers intervened and asked Nurse Vasseller to see him, and she made him wait nine hours to be seen before being sent back to his dorm in pain without medical care. On November 20, 2007 Nurse Vasseller refused to put the plaintiff on the sick call list, so he declared a medical emergency. An officer pleaded with the medical department to provide care for the plaintiff but they refused. When Nurse Vasseller was forced to examine him, and because she was upset she purposely caused him pain by pushing his swollen

testicles upward toward his stomach, breaking a needle in his arm and throwing his arm against his chest while taking his blood pressure. The plaintiff then saw a doctor who prescribed pain medication and a scrotal support and determined that the plaintiff needed surgery. The plaintiff alleged that Nurse Vasseller had knowledge that he was in chronic pain and suffering but refused to provide proper medical care. (DE# 1).

The plaintiff further alleged that at ECI in July of 2008, a CT scan revealed that the plaintiff needed surgery to repair the hernia, but Dr. Balmir has repeatedly refused to arrange for the surgery. He claimed that he is still chronic pain and that he frequently urinates blood. He sought monetary damages and equitable relief. (DE# 1).

A Preliminary Report recommended that the Eighth Amendment claim against Nurse Vasseller and Dr. Balmir proceed against them in their individual capacity.[1] (DE# 7). The District Court subsequently adopted this recommendation. (DE# 68).

Plaintiff Banks filed a motion for summary judgement (DE# 85) and Balmir filed a response. (DE# 89). Balmir also filed a motion for summary judgment wherein he argued that Banks failed to present sufficient evidence in support of the deliberate indifference claim and that Balmir is entitled to qualified immunity. (DE# 88). Balmir attached various exhibits including his 3/4/10 affidavit (DE# 88-1) and a transcript of Banks's 12/9/09 deposition (DE# 88-2). Banks filed a response to Balmir's motion wherein he countered that he was denied proper medical care when Balmir denied him surgery after several medical professionals deemed surgery necessary. (DE# 97). Balmir subsequently filed a reply to Banks's response. (DE# 100).

II.  Background Facts

---

[1] Defendant Vasseller has failed to appear in this action, therefore, Banks filed a motion for default judgment. (DE# 17). The Undersigned granted Banks's motion and directed the Clerk to enter a Clerk's entry of default against Nurse Vasseller. (DE# 18). The Clerk complied. (DE# 19). At this point in the proceedings, the District Court has not ruled on Bank's motion for final default judgment (DE# 20), because Banks has not yet submitted evidence of the amount of damages, notwithstanding this Court's directing Banks to do so. (DE# 32).

The following facts are derived from Banks's deposition (DE# 88-2) and the grievances attached to his complaint (DE# 1, p. 25-57). Banks testified at his deposition that he developed a hernia on 11/15/07 when he was being transported in a bus by prison officials. (DE# 88-2, p. 9-10). He stated that a doctor at SFRC diagnosed the hernia. (DE# 88-2, p. 11-13). Banks conceded that he does not have copies of his medical records which allegedly support his testimony.[2] (DE# 88-2, p. 11-13). SFRC officials sent him to outside physicians who also diagnosed his hernia. (DE# 88-2, p. 14-15). While at SFRC, he was referred to Nurse Vasseller who refused to treat his hernia. (DE# p. 11-12). Banks filed an 11/19/07 Inmate Request at SFRC wherein he explained Nurse Vasseller's actions. (DE# 1, p. 25-26). The SFRC official's 11/21/07 response stated, "You were seen at the medical clinic. The doctor examined you and prescribed medication. Lab work was ordered. You were found to have a right inguinal hernia which is chronic pre-existing condition which will be addressed at your permanent camp." (DE# 1, p. 25-26).

After spending two weeks at SFRC, Banks was transferred to ECI. (DE# 88-2, p. 16). He filed a 1/18/08 Request for Administrative Remedy or Appeal wherein he alleged that Dr. Balmir denied him medical care. (DE# 1, p. 32-33). Specifically, Balmir examined Banks and stated that Banks's medical records did not indicate that Banks had a hernia, therefore, Balmir refused to accept Banks's claim that he had a hernia. (DE# 1, p. 32-33). In addition, Balmir refused to prescribe pain medication or refer Banks to a specialist to discuss surgery. (DE# 1, p. 32-33). In a 2/6/08 Response, Balmir approved the request and stated, "on 1/24/08 you were seen by medical regarding a follow up on the hernia. At this time you admitted seeing blood in your urine, but denied any pain from the hernia. Medical generated a urology referral. In addition, medical has re-evaluated your chart and has determined

---

[2] Banks stated in his response to Balmir's motion for summary judgment that this Court should deny Balmir's motion based on "factual information in [Banks's] medical record, which the court should have a copy of." (DE# 97). However, the record reflects that neither party has submitted copies of any medical records.

that a general surgeon evaluation for a hernia repair was justified. This referral has been submitted for approval to the utilization management department." (DE# 1, p. 33).

Banks filed 2/18/08 Inmate Request complaining that he had not yet had a general surgeon evaluation. (DE# 1, p. 38). Dr. Simo (Chief Health Officer at ECI) approved Banks's request in a 2/20/08 response wherein she explained that Banks was scheduled to see a surgeon on 2/21/08 and that a request for a CT scan had been submitted. (DE# 1, p. 38). Banks filed a 2/29/08 Request for Administrative Remedy or Appeal wherein he complained about his pain and stated that he needed surgery. (DE# 1, p. 39). In a 3/10/08 Response, Nancy Finisse (Senior Health Service Administrator at ECI) approved Banks's request and stated, "In order for you to have the surgery, the surgeon recommended a CT scan prior to surgery. You have an upcoming appointment for the CT Scan. Once the CT Scan is done we can proceed with the surgery." (DE# 1, p. 40). Banks filed a 4/7/08 Request for Administrative Remedy or Appeal wherein he stated that he was still waiting for the CT scan. (DE# 1, p. 41). Dr. Simo's 4/29/08 Response approved the request and explained, "Record review indicated you are in the process of having a pelvic CT scan done. The labs were already done on 4/11/08. Once the CT scan is conducted then the surgery will take place." (DE# 1, p. 43).

On 7/18/08, Banks filed another Request for Administrative Remedy or Appeal wherein he stated that on 7/3/08 Dr. Balmir refused to arrange for the surgery as Balmir believed it could kill Banks because Banks was HIV positive. Banks claimed that the outside surgeon told him that he would die if he did not have the surgery. (DE# 1, p. 47). In a 7/18/08 Response, Balmir denied Banks's request and added, "Record review indicates on 6/12/08 you were seen by the surgeon. Then you were schedule[d] for an abdominal CT scan and the results were negative. On 7/3/08 you were seen by the doctor where you were fully educated. You were also informed that your report did not reveal any herniation [and] you will be reexamined every 3 months. You were instructed to declare an emergency if you discover any lump or mass in that area." (DE# 1, p. 52).

4

During his deposition, Banks explained that Dr. Ortiz at the ECI began to treat Banks instead of Dr. Balmir. (DE# 88-2, p. 29). Ortiz gave Banks Ibuprofen for the pain and gave him a shot which caused the swelling to decrease. (DE# 88-2, p. 26, 29). Banks continues to experience pain from his hernia. (DE# 88-2, p. 27). Ortiz has not expressed an opinion regarding surgery and there are no plans for Banks to undergo surgery. (DE# 88-2, p. 29).

## III. Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the

burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson, 477 U.S. 242).

### B. The Law Relating to Medical Claims In the Prison Context

#### Causation

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

#### Medical Indifference

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a

matter of constitutional right depends upon its severity. See id. at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In Estelle, 429 U.S. at 103, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[3] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[4] Thus, it is well

---

[3] It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[4] The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle, 429 U.S. at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim); Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991) ("mere medical malpractice does

settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, 429 U.S. at 103; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

---

not constitute deliberate indifference"... "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment"). See Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F. Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

## **The Eighth Amendment**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an objective element*, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) *a subjective element*, deliberate indifference on the part of the defendant(s) to that condition, Id. (citing Wilson v. Seiter, 501 U.S. 594 (1991)); and 3) causation, Id. (citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982)). Both the objective and subjective elements must be satisfied. LaMarca, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan, the Court provided further explanation of the mental state that is required for deliberate indifference.  511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell, 169 F.3d at 1364 (citing Farmer, 511 U.S. at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting Farmer, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." Campbell, 169 F.3d at 1364 (citing Farmer, 511 U.S. at 837).

### C.  Application of the Law In this Case

Serious Medical Need

Balmir argues that Banks failed to present sufficient evidence that he had a hernia because Banks has not provided any medical

10

records documenting the hernia diagnosis. Banks testified under oath during his deposition that he developed a hernia on 11/15/07 and that an SFRC physician diagnosed the problem shortly thereafter. This testimony is bolstered by an SFRC official's Response to Banks's 11/19/07 Inmate Request which states that lab work showed Banks had a "right inguinal hernia." (DE# 1, p. 26). In the responses to Banks's grievances, generated by ECI officials, Banks's hernia diagnosis was accepted as true. In light of the foregoing, and notwithstanding the lack of medical records, Banks has sufficiently alleged that he has serious medical needs.

### Deliberate Indifference

According to Balmir's affidavit,"Every request for medical care and/or treatment received from the Plaintiff was carefully reviewed, and the appropriate decisions were made, based on the facts and circumstances, in my medical judgment and opinion." (DE# 88-1). In addition, he asserted, "I was never deliberately indifferent to the Plaintiff's medical needs, much less any serious medical needs. The appropriate recommended medical action was taken." (DE# 88-1). Banks testified at his deposition that Balmir was deliberately indifferent to his serious medical needs because Balmir agreed to arrange for Banks to have surgery then changed his mind several weeks later. (DE# 88-2, p. 24).

Defendant Balmir's failure to arrange for Banks to undergo surgery does not rise to the level of deliberate medical indifference. As noted supra, at footnote 4 of this Report, and related text, a difference of opinion between an inmate/patient and institutional medical staff, alone, does not amount to deliberate indifference to the inmate/patient's serious medical needs. Estelle v. Gamble, supra, 429 U.S. at 107; Harris v. Thigpen, supra, 941 F.2d at 1505.

In addition, Banks's grievances did not go unnoticed. Dr. Diaz-Bolano approved Banks's 12/31/07 grievance and placed Banks on a call-out for medical evaluation. (DE# 1, p. 28-31). According to Dr. Balmir's response to Banks's 1/18/08 Request for Administrative Remedy/Appeal, Banks was examined on 1/24/08 regarding his hernia and a urology referral was made. (DE# 1, p. 32-33). Dr. Simo

(CHO) scheduled a 2/21/08 appointment for Banks with an outside surgeon. (DE# 1, p. 38). Balmir explained in his 7/18/08 response to Banks's grievance that Banks was examined by a surgeon on 6/12/08. The surgeon conducted a CT scan which did not reveal any herniation. Dr. Balmir explained that Banks would be examined every three months and noted that Banks should declare an emergency if he discovered a lump or mass. (DE# 1, p. 52).

The foregoing evidence, presented to this Court by Banks himself, shows that Banks did receive treatment. The fact that Banks was treated with a more conservative course of treatment than he would have liked amounts to a difference of opinion, and does not itself support a claim of deliberate indifference. Chappell v. Bayer, No. 97-17040, 1999 WL 62741, at *1 (9 Cir., Jan.22, 1999)(holding, "although Chappell disagrees with Dr. Spector's conservative course of treatment, a difference in opinion is insufficient to support a claim of deliberate indifference"); Alexander v. Federal Bureau of Prisons, et al., 227 F. Supp. 657 (E.D. Kentucky 2002) (citing Espinal v. Coughlin, 1999 WL 387435 (S.D. N.Y. 1999)(in which summary judgment was granted to prison doctors on grounds that an Eighth Amendment claim was not presented, in facts showing a mere disagreement with a course of treatment, a 3 year delay from the prisoner's complaints about his knee until constructive surgery was performed, and a conservative course of treatment during that time)); Stevenson v. MDOC, et al., No.1:07cv213, 2009 WL 4260596, at *6 (W.D. Mich., Nov. 24, 2009)(stating, "[w]hile plaintiff now disagrees with Dr. Sneeberger's conservative course of treatment that commenced on April 15, 2004, this disagreement does not rise to the level of an Eighth Amendment claim").

In this case, Banks has failed to present sufficient evidence to establish conscious or callous indifference to his serious medical needs. See Estelle, 429 U.S. at 104-06. Accordingly, entry of summary judgment in favor of defendant Balmir is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(A summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essen-

tial to that party's case, and on which that party will bear the burden of proof at trial.").[5]

### D. Plaintiff Banks's Motion for Summary Judgment

Banks filed a two-page document captioned "Motion for Summary Judgment." He requests that this Court grant his motion because defense counsel failed to comply with Local Rule 16.1, comply with Federal Rule of Civil Procedure 26(a), provide Banks with a copy of every motion, and release Banks's medical records. (DE# 85). Balmir responded that he does not believe he has failed to comply with Rule 16.1; that Banks waived any objection with regard to Rule 26, which relates to initial disclosures, by completing discovery without ever filing a motion seeking initial disclosures; and that he has sent Banks copies of all papers submitted to this Court through CM/ECF and has provided duplicate copies to Banks upon request. Lastly, Balmir notes that this court has repeatedly denied Banks's motion to compel Balmir to produce Banks's medical records. (DE# 89).

Regardless of the merits of Balmir's counter arguments, Banks's motion for summary judgment does not establish that "there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Accordingly, Banks's motion should be denied.

### IV. Recommendation

It is therefore recommended that:

1. Defendant Balmir's motion for summary judgment (DE# 88) be granted.

2. Banks's motion for summary judgment (DE# 85) be denied.

3. Balmir be dismissed from the proceedings.

---

[5] Having concluded that summary judgment in the defendant's favor is appropriate on the merits, it is not necessary to consider whether the defendant is entitled to qualified immunity.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 27th day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Eddie Lee Banks, Pro Se
    DC No. A210551
    Everglades Correctional Institution
    P. O. Box 949000
    Miami, FL 33194-9000

    Tullio Emil Iacono
    Cole Scott & Kissane, PA
    Dadeland Centre II
    9150 South Dadeland Bld
    14th Floor
    Miami, FL 33156